# UNITED STATES DISTRICT COURT
## IN THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| CHARLES LYNEM,<br><br>                    Plaintiff,<br><br>v.<br><br>KYM WORTHY, Individually<br>And in her capacity as elected<br>Prosecutor for Wayne County,<br><br>                    Defendant. | Civil Action No.<br><br><br>**COMPLAINT AND<br>JURY DEMAND** |

Alyson Oliver (P55020)
Cameron Bell (P81934)
Paul Matouka (P84874)
OLIVER LAW GROUP P.C.
Attorneys for Plaintiff
1647 W. Big Beaver Rd.
Troy, MI 48084
T: (248) 327-6556
E: notifications@oliverlawgroup.com

## **COMPLAINT AND JURY DEMAND**

NOW COMES PLAINTIFF, CHARLES LYNEM, by and through his counsel OLIVER LAW GROUP P.C. and in support of his Complaint states as follows:

1

## JURISDICTION/VENUE

1. The Plaintiff is a resident of the County of Macomb, State of Michigan.

2. Upon information and belief, Defendant Worthy is a resident of the County of Wayne, State of Michigan, and is employed in the role of Prosecuting Attorney for Wayne County, Michigan.

3. This case is related to stigmatizing false statements made to the public by Defendant, regarding Plaintiff being convicted of crimes of which he was previously acquitted, and damages flowing therefrom.  This case does not relate to the appropriateness of the original prosecution of Plaintiff by Defendant or any claims of damages flowing therefrom.

4. These statements were made in the County of Wayne, State of Michigan.

5. This suit is against Defendant in her individual capacity for the requested monetary relief and official capacity for the requested injunctive relief.

6. This action arises under the United States Constitution and 42 U.S.C. §1983.

7. This suit is brought pursuant to federal question jurisdiction, 28 U.S.C. §1331.

8. Venue is proper within this District pursuant to 28 U.S.C. 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims in this Complaint occurred within this District.

## FACTS

9.  The foregoing paragraphs are incorporated as if fully restated herein.

10. At all times relevant to the allegations herein, Plaintiff was and remains a police officer employed by the City of Detroit.

11. In 2015, Plaintiff was charged with False Report of a Felony and Failure to Uphold the Law as a Public Official in case number 15-010313-02-FH by Defendant.

12. Also, in 2015, Plaintiff was charged in case number 15-010312-02-FH with Embezzlement, Larceny, False Report of a Felony, and Embezzlement as a Public Official over $50.00 by Defendant.

13. Plaintiff was arraigned on the charges in January 2016 in the Wayne County Circuit Court.

14. These charges were initiated and prosecuted to conclusion by Defendant in her capacity as the elected prosecutor for the County of Wayne.  As such, Defendant knew the case history, and the result at all times relevant hereto.

15. These charges were vehemently denied by Plaintiff from initiation through the conclusion of the cases.

16. Plaintiff was tried before a jury of his peers in both cases and was found **Not Guilty** on both cases.  **Exhibit A – Verdict Forms.**

17. *Brady v. Maryland*, 373 US 83 (1963) provides a duty upon prosecutors to disclose to the defense in a criminal case material information that is favorable to a defendant. This material is commonly referred to as '*Brady* material'.

18. *Giglio v. United Sates* 405 US 150 (1972) requires that, in order to meet the obligation imparted upon prosecutors in *Brady*, prosecutors must include not only material related to the crime, but also, under certain circumstances, information that would negatively affect the credibility of a prosecution witness.

19. The Prosecuting Attorneys Association of Michigan has provided *Best Practices Recommendation regarding Brady/Giglio material*. **Exhibit B  - Prosecuting Attorneys Association of Michigan Best Practices document.** The document outlines how prosecutors are to coordinate with police agencies and utilize their own discretion in determining the disclosable facts to be given to the Defendant specific to each case.

20. On July 16, 2020, regarding the public dissemination of the '*Giglio-Brady'* list (hereinafter 'Giglio-Brady list') by Wayne County Prosecutor Kym Worthy, a statement was released to the press thru the Wayne County Prosecutor's office's website and stated:

> "Last October we contacted all local Police Chiefs, representatives from the Wayne County Sheriff's, Michigan State Police and Federal agencies.  We asked for a list of their current and former officers that have committed

offenses spelled out in the Giglio case for offenses spelled out in the Giglio case for offenses involving theft, dishonesty, fraud, false statement, bias and bribery. These are crimes that can be considered by fact finders in a trial when credibility is being assessed. In addition, our assistant prosecutors are charged with letting defense attorneys know when an officer on their witness list for a case had Giglio issues or concerns.

Because trials will begin again mid-August and September, we thought it was important to send this out to our prosecutors and defense attorneys. There are currently 35 officers on the list. We are taking the additional step of releasing the list to the public, because in an era of criminal justice reform, it just makes sense. We will repeat this process quarterly and expect to release an updated list in September." **Exhibit C – July 16, 2020 Statement from prosecutor Kym Worthy and Giglio–Brady List**.

21. Plaintiff is listed as the second officer on the *Giglio-Brady* list that reflects his crime to be providing dishonest and false statements. **Exhibit D – Giglio-Brady List.**

22. Defendant's *Giglio-Brady* list does not distinguish between individuals who were convicted, acquitted, or merely accused of the "reasons" for their listing.

23. Upon information and belief, to date, the following news organizations have published the list:

- The Detroit News

- WXYZ.com

- Fox2Detroit.com

- Miheadlines.com

- Metrotimes.com

- Newsbreak.com

- Patch.com

- Thenewsherald.com

24. There may be other publications of the list by other news organizations of which Plaintiff is not currently aware; and based on Defendant's assertions, the list will continue to be published in the future, to the public as it was on July 16, 2020.

25. That Defendant Worthy's statement to the press accompanying the *Giglio-Brady* list with Plaintiff's name were carried in print, blanketed southeastern Michigan, and was even disseminated worldwide via the internet.

26. Next, on December 7, 2020, regarding the public dissemination of the '*Giglio-Brady'* list by Wayne County Prosecutor Kym Worthy, a statement titled "Prosecutor Kym Worthy's Statement on Release of Giglio List", was released to the press stating:

"In July 2020, the Wayne County Prosecutor's Office contacted all local Police Chiefs, representatives from the Wayne County Sheriff's Office, Michigan State

Police, and Federal agencies.  We asked for a list of their current and former officers that have committed offenses detailed in Giglio v. United States, 405 U.S. 150 (1972) that involve theft, dishonesty, fraud, false statement, bias, and bribery.  These are offenses that can be considered by fact finders in a trial when credibility is being assessed.  In addition, our assistant prosecutors are charged with letting defense attorneys know when an officer on their witness list for a case has Giglio issues or concerns.  Brady v. Maryland, 373 U.S. 83 (1963).

Because trials are scheduled to resume in January, we thought it was important to send this out to our prosecutors and defense attorneys.  There are currently 52 officers on the list.  In advance of this release WCPO has notified all police agencies who have a current or former officer on the list.  We are continuing to take the additional step of releasing the list to the public because in an era of criminal justice reform, it just makes sense.  We plan to review, update and release this list on a quarterly basis." **Exhibit E – December 7, 2020 Statement from prosecutor Kym Worthy and Giglio–Brady List**.

27. Defendant's statements regarding Plaintiff in July and December 2020 are blatantly untrue.

28. Plaintiff did not "commit offenses spelled out in the Giglio case for offenses spelled out in the Giglio case for offenses involving theft, dishonesty, fraud, false statement, bias and bribery".  Plaintiff was acquitted of all charged crimes and

thusly Defendant's statement that "these are crimes that can be considered by fact finders in a trial when credibility is being assessed" is untrue as applied to Plaintiff.

29. Moreover, even if Defendants kept Plaintiff on such a list provided to prosecutors and police to be considered in the prosecutor's discretion on a case by case basis; the *public* dissemination of the list as Defendants did 1) is not accurate; 2) would reasonably lead the public to believe Plaintiff engaged in and was convicted of the alleged theft, dishonesty, fraud, false statement, bias and bribery; and 3) has nothing to do with the compliance of Defendant with her obligation under *Brady* and *Giglio* as reflected by **Exhibit B,** and indeed was ultra vires.

30. Defendant's statements to the press accompanying the public dissemination of the *Brady-Giglio* list that included Plaintiff's name despite his acquittal of all charges are not statements or conduct for which Defendant is afforded immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993).

31. Plaintiff has been provided no additional trial or other procedural mechanism whereby he could defend against Defendant's continued and malicious prosecution in the media for crimes of which he has already been acquitted.

32. The result of the widespread dissemination of highly negative and untrue statements about Plaintiff stigmatizes him in his chosen profession and causes him shock, grief and embarrassment.

33. Defendant Kym Worthy's statements as well as publication of the *Giglio-Brady* have caused and will continue to cause Plaintiff irreparable harm through the misappropriation of public information that he committed heinous crimes under the color of law when in fact he was acquitted of any and all wrongdoing.

**COUNT ONE**
**42 U.S.C. § 1983: FOURTEENTH AMENDMENT**
**OF THE UNITED STATES CONSTITUTION**
**DEPRIVATION OF PROPERTY AND LIBERTY**
**WITHOUT DUE PROCESS OF LAW**
**PROCEDURAL AND SUBSTANTIVE**

34. Plaintiff repeats and re-allege the allegations of the above paragraphs.

35. Wayne County Prosecutor's Office has explicitly stated a policy in publicly publishing every quarter, identities of persons listed on the Giglio Brady list who, it its' view, "commits offenses spelled out in the Giglio case for offenses involving theft, dishonesty, fraud, false statement, bias and bribery" and "crimes that can be considered by fact finders in a trial when credibility is being assessed".

36. This a policy or custom made by Defendant Worthy or said to represent official policy by Defendant Worthy or the Wayne County Prosecutor's Office.

37. This policy clearly does not impart upon Defendant or the Wayne County Prosecutor's Office a duty to verify the accuracy of the list or conduct any due diligence that the inclusion of persons on the list are appropriate under *Giglio/Brady* standards.

38. This policy provides no ability to challenge or appeal inclusion in the list.

39. This policy lacks due process protections as set forth above and is without regard to the actual *Giglio/Brady* standards as demonstrated by Plaintiff's inclusion in it. Additionally, this policy represents a random and ultra vires act by the Defendant whereupon available state remedies are not adequate to redress Plaintiff's deprivation of rights as more fully discussed below.

40. Plaintiff is, as a matter of law, not guilty of any offenses involving theft, dishonesty, fraud, false statement, bias and bribery or of any issue or concern denoted in *Giglio/Brady*, by virtue of his acquittal of charges through the only means in which state law criminal charges can be resolved under the laws of the State of Michigan, and indeed was a proceeding brought by the prosecuting attorney before the judiciary that was resolved by a jury trial.

41. Plaintiff secured through that process, a full and complete acquittal by jury trial of all charges against him.

42. Plaintiff has a legitimate claim of entitlement to his acquittal and the import of same as to his innocence; and a legitimate claim of entitlement to be free from subsequent allegations of guilt by the prosecutor who prosecuted him without conviction and to be free from subsequent stigmatization in his chosen profession.

43. The continuation of subsequent allegations against him by the Defendant of having committed offenses involving theft, dishonesty, fraud, false statement,

bias and bribery and that same can be considered by fact finders in a trial when credibility is being assessed deprives Plaintiff of his liberty and property interests in his acquittal, and his right to be considered to have been adjudicated fully and finally with his presumptive innocence intact.

44. Plaintiff has no remedies under state law to rebut Defendant's prosecutor's subsequent accusations of guilt occurring after the criminal case is over and finalized with a not guilty verdict, reclaim the import of his acquittal, or be returned to a state where his presumptive innocence is intact as set forth by the jury's verdict where the prosecutor thereafter continuously and purposefully states that he was convicted of crimes.

45. Defendant's official actions as set forth herein deprive Plaintiff of a substantive fundamental right to be secure in his property and liberty interests regarding the acquittal and the presumption of innocence, and free from subsequent stigmatization as set forth above.

46. Defendant's actions shock the conscience where the acquittal of Plaintiff was a result of a trial that was prosecuted by Defendant without conviction, records of which are readily available to Defendant.

47. The conduct described herein is so severe, and so disproportionate to the need presented in a requirement of a prosecutor to provide *Giglio/Brady* material to the defense bar, and to subsequently insist Plaintiff was convicted of crimes

where he was not to the public, is a complete, intentional, and unjustified abuse of authority such that it transcends the bounds of ordinary tort law and establishes a deprivation of constitutional rights.

48. There can be no malicious prosecution claim here under state law where the first prosecution itself is not claimed to have been malicious, it is the subsequent insistence of guilt by the prosecutor post acquittal that is at issue here, which has not and cannot result in any attempt to re-prosecute and thusly, the elements of a state law malicious prosecution claim cannot be met.

49. These policies and practices, actions, and non-actions, have been and continue to be implemented by Defendant personally and in her official capacity, and by her agents, officials, employees, and all persons acting in concert with her under color of state law, and are the cause of Plaintiffs' ongoing deprivation of rights secured by the United States Constitution under the Fourteenth Amendment and federal law.

50. Defendant has been and is aware of all the deprivations complained of herein and nevertheless condoned, created, maintained, and allowed the conduct.

51. As a result of the violation of Plaintiff's rights as set forth herein, he has been damaged as more fully set forth below.

## COUNT TWO
## DEFAMATION: LIBEL AND SLANDER

52. The foregoing statements are incorporated as if fully restated herein.

53. Defendant stated on July 16, 2020:

"Last October we contacted all local Police Chiefs, representatives from the Wayne County Sheriff's, Michigan State Police and Federal agencies. We asked for a list of their current and former officers that have committed offenses spelled out in the Giglio case for offenses spelled out in the Giglio case for offenses involving theft, dishonesty, fraud, false statement, bias and bribery. These are crimes that can be considered by fact finders in a trial when credibility is being assessed. In addition, our assistant prosecutors are charged with letting defense attorneys know when an officer on their witness list for a case had Giglio issues or concerns.

Because trials will begin again mid-August and September, we thought it was important to send this out to our prosecutors and defense attorneys. There are currently 35 officers on the list. We are taking the additional step of releasing the list to the public, because in an era of criminal justice reform, it just makes sense. We will repeat this process quarterly and expect to release an updated list in September." **Exhibit C – July 16, 2020 Statement from prosecutor Kym Worthy and Giglio–Brady List**.

54. The publication of Prosecutor's Kym Worthy's statements that Plaintiff actually "committed offenses that involve theft, dishonesty, fraud, false statement, bias and bribery" are false.

55. Prosecutor Kym Worthy 's statement that "There are crimes that can be considered by fact finders in a trial when credibility is being assessed." as it relates to Plaintiff is false.

56. Next, on December 7, 2020, regarding the public dissemination of the '*Giglio-Brady*' list by Wayne County Prosecutor Kym Worthy, a statement titled "Prosecutor Kym Worthy's Statement on Release of Giglio List", was released to the press stating:

"In July 2020, the Wayne County Prosecutor's Office contacted all local Police Chiefs, representatives from the Wayne County Sheriff's Office, Michigan State Police, and Federal agencies.  We asked for a list of their current and former officers that have *committed offenses* detailed in Giglio v. United States, 405 U.S. 150 (1972) that involve theft, dishonesty, fraud, false statement, bias, and bribery. These are offenses that can be considered by fact finders in a trial when credibility is being assessed."  **Exhibit E – December 7, 2020 Statement from prosecutor Kym Worthy and Giglio–Brady List (emphasis added)**.

57. The publication of Prosecutor's Kym Worthy's statements that Plaintiff actually "committed offenses . . . that involve theft, dishonesty, fraud, false statement, bias and bribery" are false.

58. Prosecutor Kym Worthy 's statement that "There are crimes that can be considered by fact finders in a trial when credibility is being assessed" as it relates to Plaintiff is false.

59. Plaintiff who was found not guilty by a jury prior to Defendant's statements.

60. Defendant's statements were published in writing and verbally to the public at large through a press release and public statements.

61. Prosecutor Kym Worthy was acting outside the scope of her executive authority where she published *Giglio-Brady* lists including Plaintiff's name along with the false statements recited herein to the public through press releases and public statements.

62. The statements made and published by Defendant to the public are not privileged. *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993).

63. Defendant knew that the statements regarding Plaintiff were false at the time that they were made in as much as Defendant was the prosecutor who tried to convict Plaintiff of these alleged crimes but could not, as he was not guilty as demonstrated by the jury verdicts.

64. Defendants acted with actual intent, or alternatively with at least reckless indifference to the truth or falsity of the statements and published list she made of and concerning Plaintiff.

65. The publishing of the *Giglio-Brady* list with the accompanying statements made by Defendant had the tendency to be injurious of Plaintiff's reputation.

66. The false statements, as alleged above, was published with total disregard of Plaintiff's privacy and individual rights.

67. A retraction demand was sent to Defendant on January 27, 2021; and no response has been received to date.

68. Plaintiff has been damaged by Defendant's conduct, as addressed below and incorporated as if restated herein.

## COUNT THREE
## DEFAMATION PER SE

69. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

70. MCL 600.2911(1) provides that words suggesting the commission of a criminal offense means that the damages to reputation and feelings are presumed, thus there is no need to prove special damages.

71. Nevertheless, Plaintiff has been damaged by Defendant's conduct, as addressed below, and incorporated as if restated herein.

## COUNT FOUR
## NEGLIGENCE/GROSS NEGLIGENCE

72. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

73. Defendant had a duty to refrain from making false statements about Plaintiff to the public.

74. Defendant knew that her statements were false when they were made but made them nevertheless with intention, or alternatively with reckless abandon.

75. Defendant's conduct was so reckless that it demonstrated a substantial lack of concern for whether Plaintiff would be injured.

76. Plaintiff was in fact injured by Defendant's false statements, and these false statements were a proximate cause of Plaintiff's injuries.

77. Plaintiff has been damaged by Defendant's conduct, as addressed below, and incorporated as if restated herein.

78. As a direct result of Defendant's malice in making these allegations, Plaintiff has suffered damage as set for the below and incorporated herein.

<u>**COUNT FIVE**</u>
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

79. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

80. Defendants' conduct as outlined above was intentional.

81. Defendants conduct as outlined above was extreme, outrageous, and of such character as not to be tolerated by a civilized society.

82. Defendants' conduct as outlined above was for an ulterior motive or purpose.

83. Specifically, accusing a police officer of criminal activity is very serious in and of itself.  A police officer, like any citizen, is entitled to a trial on such charges that comports to constitutional requirements.  In this case, a trial as provided for in conformity with constitutional requirements, and it resulted in an acquittal of all charges.  For the same prosecutor to continue to prosecute the officer, through the media and through statements ultra vires to her role as prosecutor in every sense, and represent to the public that the officer is nevertheless guilty of the alleged crimes regardless of the acquittal; this results in a complete abandonment of the structures of our society that are designed to ensure that the results of trials are respected and honored, and when an acquittal occurs, that the matter has been finalized and no longer will be a chain around that person's neck into eternity. Plaintiff has no means in which to defend himself further against Defendant's continued prosecution of him through public statements in the media as the elected prosecutor for the county, which is not a tolerable result and is outrageous.

84. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered severe emotional distress, and damages as set for the below and incorporated herein.

## **DAMAGES**

85. The foregoing allegations are incorporated as if restated herein.

86. Plaintiff has been damaged by Defendant in a manner including:

a.  Reputational harm;

b.  Deprivation of property and liberty interest in his acquittal;

c.  Economic damages;

d.  Loss of goodwill;

e.  Loss of advantageous business relationships;

f.  Non-economic damages;

g.  Punitive damages;

h.  Exemplary damages;

i.  Attorney fees;

j.  Costs of suit;

k.  Interest;

l.  And all other damages found reasonable and proper by this Court.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

A.  Adjudge and declare that the acts, omissions, policies, and practices of Defendant and her agents, employees, officials, and all persons acting in concert with her under color of state law or otherwise as described herein are in violation of the rights of the Plaintiff under Fourteenth Amendment to the United States Constitution and federal law.

B.      Issue immediate injunctive relief upon hearing regarding same.

C.      Issue a judgment against Defendant in an amount to be determined at trial, including compensatory and punitive damages in an amount that is fair, just, and reasonable and will hold Defendant liable for the civil rights violations alleged.

D.      Award Plaintiff the costs of this suit, and reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 1988, and other applicable law; and

E.      Grant Plaintiff such other relief as the Court deems appropriate and just.

## **JURY DEMAND**

Plaintiff seeks a jury trial in this matter.

Respectfully Submitted,

OLIVER LAW GROUP P.C.

Date: March 10, 2021            /s/ Alyson Oliver _____
                                Alyson Oliver (P55020)
                                OLIVER LAW GROUP P.C.
                                1647 W. Big Beaver Rd.
                                Troy, MI 48084
                                T: (248) 327-6556
                                F: (248) 436-3385
                                E: notifications@oliverlawgroup.com

                                *COUNSEL FOR PLAINTIFF*

# EXHIBIT A

**THIRD CIRCUIT COURT OF MICHIGAN FOR THE COUNTY OF WAYNE**
**CRIMINAL DIVISION**

**PEOPLE OF THE STATE OF MICHIGAN,**
     Plaintiff


-v-                                                    Honorable Margaret M. Van Houten

**CHARLES LYNEM,**                        3CC#:  15-010312-02-FH
    Defendant                           **(Complainant Kamaal Cogborn)**


_____/

## **VERDICT FORM**

You may return only one verdict on each these charges. Mark only **one** box for each count.

### **Count 3:  Larceny**
☑ Not Guilty
☐ Guilty of Larceny

### **Count 4:  Common Law Offenses – Misconduct in Office**
☑ Not Guilty
☐ Guilty of Common Law Offenses – Misconduct in Office

### **Count 5:  False Report of a Felony**
☑ Not Guilty
☐ Guilty of False Report of a Felony

**THIRD CIRCUIT COURT OF MICHIGAN FOR THE COUNTY OF WAYNE
CRIMINAL DIVISION**

**PEOPLE OF THE STATE OF MICHIGAN,**
     Plaintiff

-v-                                   Honorable Margaret M. Van Houten

**CHARLES LYNEM,**                      3CC#: 15-010313-02-FH
     Defendant                         **(Complainant James Stokes)**

_____/

## <u>VERDICT FORM</u>

You may return only one verdict on each these charges. Mark only **one** box for each count.

### <u>Count 1:  Common Law Offenses – Misconduct in Office</u>
☑ Not Guilty

❑ Guilty of Common Law Offenses – Misconduct in Office

### <u>Count 2:  False Report of a Felony</u>
☑ Not Guilty

❑ Guilty of False Report of a Felony

### <u>Count 3:  Failure to Enforce the Law</u>
☑ Not Guilty

❑ Guilty of Failure to Enforce the Law

_____        _____
Foreperson Signature                               Date

# EXHIBIT B

 **Prosecuting Attorneys Association of Michigan**

### BEST PRACTICES RECOMMENDATION
### *BRADY/GIGLIO* MATERIAL

In *Brady v Maryland*, 373 US 83, (1963), the United States Supreme Court held that it is the duty of the prosecuting attorney in a criminal trial to disclose to the defense, material information that is favorable to the defendant. Failure to disclose such evidence may violate due process if the evidence is material to either guilt or punishment, regardless of the "good faith or bad faith of the prosecution." In *Giglio v United States*, 405 US 150 (1972), the Court made clear that *Brady* information includes not only information directly related to the crime, but also, under certain circumstances, information that would negatively affect the credibility of a prosecution witness.

Because prosecutors have an obligation to assure a defendant is provided a fair trial, to meet the demands of disclosure under *Brady* and its progeny, as well as applicable statutes and court rules, the Prosecuting Attorneys Association of Michigan (PAAM) recommends:

- Prosecutors remain well-informed as to the legal requirements of *Brady* and its progeny, as well as any laws or court rules which bear on these obligations. Continuing education in this area is essential, particularly for new prosecutors.

- Prosecutors shall be responsible for knowing applicable discovery obligations, as well as the duty to disclose material exculpatory and impeachment evidence. This obligation should not be delegated to support staff, but is the responsibility of the case attorney.

- In order to fulfill the constitutional requirement of *Giglio*, prosecutors should contact police agencies within their jurisdiction to advise them of the duty to disclose impeachment evidence and to develop procedures to determine whether such information exists concerning a law enforcement officer.

- *Brady/Giglio* materials must be disclosed even in the absence of a request from the defendant and must be disclosed in a timely manner.

- Prosecutors should coordinate with police agencies to ensure that all supplemental reports and case information are turned over to the prosecution.

- Prosecutors should determine whether their office possesses potential impeachment evidence regarding a witness. This determination should include, but is not limited to, for example, searching the case management system used by the prosecutor's office to determine whether the witness has been charged with or convicted of an impeachable crime, or has agreed to cooperate pursuant to a plea agreement.

- If there is a question regarding the necessity of disclosing any particular piece of information it may be advisable to file a motion with the court for an in camera review to obtain a ruling.

- When conducting a *Brady/Giglio* review, prosecutors should use their individual discretion to determine the disclosable facts specific to each case. If uncertain whether disclosure is appropriate, the case attorney should review the applicable law and consult with other staff and/or prosecution resources, always against the backdrop of the obligation to ensure the defendant's right to a fair trial.

- Prosecutors should adopt office practices and procedures to assist in fulfilling these obligations.

A best practices recommendation by the Prosecuting Attorneys Association of Michigan (PAAM) is the product of careful consideration of experienced prosecuting attorneys. However, it is only a recommendation. A best practices recommendation may or may not be feasible or desirable to implement in every jurisdiction. There may be other methods in local jurisdictions to reach the same or similar objectives.

Date approved by PAAM: June 17, 2016

# EXHIBIT C



**KYM L. WORTHY
PROSECUTING ATTORNEY**

**COUNTY OF WAYNE
OFFICE OF THE PROSECUTING ATTORNEY**

**FRANK MURPHY HALL OF
JUSTICE
1441 ST. ANTOINE STREET
DETROIT, MICHIGAN 48226-
2302**

Press Release
July 16, 2020
One Page

*For Immediate Release*

Contact:  Maria Miller
Wayne County Prosecutor's Office
Assistant Prosecuting Attorney
(313) 224-5817
(313) 213-0457
mmiller@waynecounty.com

## Statement from Prosecutor Kym Worthy on Release of Giglio-Brady List

"Last October we contacted all local Police Chiefs, representatives from the Wayne County Sheriff's, Michigan State Police and Federal agencies.  We asked for a list of their current and former officers that have committed offenses spelled out in the Giglio case for offenses involving theft, dishonesty, fraud, false statement, bias and bribery.  These are crimes that can be considered by fact finders in a trial when credibility is being assessed.  In addition, our assistant prosecutors are charged with letting defense attorneys know when an officer on their witness list for a case had Giglio issues or concerns."

"Because trials will begin again mid-August and September, we thought it was important to send this out to our prosecutors and defense attorneys.  There are currently 35 officers on the list. We are taking the additional step of releasing the list to the public, because in an era of criminal justice reform, it just makes sense. We will repeat this process quarterly and expect to release an updated list in September."

#####

# EXHIBIT D

## OFFICE GIGLIO-BRADY LIST

| First Name | Last Name | Agency | Reason |
|---|---|---|---|
| Chancellor | Searcy | DPD | Dishonesty and false statements |
| Charles | Lynem | DPD | Dishonesty and false statements |
| John | McKee | DPD | False statement |
| Steven | Fultz | DPD | False statement |
| Nevin | Hughes | DPD | False statement |
| William | Little | DPD | False statement |
| Sean | Harris | DPD | False statement |
| Myron | Weathers | Highland Park/DPD | Fraudulent activity |
| William | Melendez | Inkster | False statement |
| Sheila | Reed | DPD | Theft and dishonesty |
| Kevin | Dowe | WCSD | Embezzlement |
| Lashaundra | Ferguson | DPD | Fraudulent activity |
| Harold | Rochon | DPD | Misconduct in office |
| Michael | Dailey | DPD | Fraudulent activity |
| Richard | Billingslea | DPD | Obstruction of justice |
| Michael | Lynch | Harper Woods | Larceny |
| Michael | Merritt | DPD | Larceny |
| Tyrone | Kemp | DPD | Fraudulent activity |
| Michael | Collins | DPD | Fraudulent activity |
| Diamond | Greenwood | DPD | Obstruction of justice |
| Naim | Brown | DPD | Bribery |
| Christopher | Staton | DPD | Fed. conviction |
| David | Hansberry | DPD | Fed. conviction |
| Bryan | Watson | DPD | Fed. conviction |
| Michael | Mosley | DPD | Fed. conviction |
| Robert S. | Smith | WCSD | Retail Fraud |
| Phillip | Smith | Lincoln Park | Untruthfulness |
| James | Fontana | Lincoln Park | Untruthfulness |
| Jamil | Martin | DPD | Fed. conviction |

| | | | |
|---|---|---|---|
| Deonne | Dotson | DPD | Fed. conviction |
| Christopher | Fey | Van Buren | Untruthfulness |
| Alex | Vinson | DPD | Larceny |
| Charles | Willis | DPD | Fed. conviction |
| Anthony | Careathers | DPD | Fed. conviction |
| Marty | Tutt | DPD | Fed. conviction |

# EXHIBIT E



KYM L. WORTHY
PROSECUTING ATTORNEY

COUNTY OF WAYNE
OFFICE OF THE PROSECUTING ATTORNEY

FRANK MURPHY HALL OF JUSTICE
1441 ST. ANTOINE STREET
DETROIT, MICHIGAN 48226-2302

Press Release
December 7, 2020
One Page

*For Immediate Release*

Contact:  Maria Miller
Wayne County Prosecutor's Office
Assistant Prosecuting Attorney
(313) 224-5817
(313) 213-0457
mmiller@waynecounty.com

## Prosecutor Kym Worthy's Statement on Release of Giglio List

"In July 2020, the Wayne County Prosecutor's Office contacted all local Police Chiefs, representatives from the Wayne County Sheriff's Office, Michigan State Police, and Federal agencies. We asked for a list of their current and former officers that have committed offenses detailed in Giglio v United States, 405 U.S. 150 (1972) that involve theft, dishonesty, fraud, false statement, bias, and bribery. These are offenses that can be considered by fact finders in a trial when credibility is being assessed. In addition, our assistant prosecutors are charged with letting defense attorneys know when an officer on their witness list for a case has Giglio issues or concerns. Brady v. Maryland, 373 U.S. 83 (1963)

"Because trials are scheduled to resume in January, we thought it was important to send this out to our prosecutors and defense attorneys. There are currently 52 officers on the list. In advance of this release WCPO has notified all police agencies who have a current or former officer on the list. We are continuing to take the additional step of releasing the list to the public because in an era of criminal justice reform, it just makes sense.  We plan to review, update and release this list on a quarterly basis."

**#####**