UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES LYNEM,                                    Case No. 21-10534

     Plaintiff,                                  Stephanie Dawkins Davis
v.                                               United States District Judge

KYM WORTHY, Individually and in
her capacity as elected prosecutor for
Wayne County,

     Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS (ECF NO. 3)**

## I.   INTRODUCTION

This dispute arises from a statement that Defendant Kym Worthy, in her role

as a prosecutor at Wayne County Prosecutor's Office ("WCPO"), made in

connection with WCPO's publication of a list of officers it identified as having

committed certain offenses—i.e., "Brady-Giglio" list.  (ECF No. 1, PageID.4-5).

Plaintiff Charles Lynem filed this action against Worthy, alleging that she violated

his Constitutional rights to substantive and procedural due process, and requesting

monetary and injunctive relief under 42 U.S.C. § 1983.  Worthy moved to dismiss

Lynem's claims, asserting the defenses of absolute and qualified immunity, and

maintaining that Lynem fails to allege that her statements deprived him of any

"liberty" or "property" interest as required to state a claim under the Due Process

Clause.  For the reasons that follow, the court finds that Plaintiff fails to

sufficiently plead his § 1983 claims against Defendant, and the court declines to

exercise supplemental jurisdiction over Plaintiff's state law claims.  Accordingly,

Defendant's Motion to Dismiss is **GRANTED**.

## II.   FACTUAL BACKGROUND

In 2015, Worthy initiated charges against Lynem, a police officer, and his

work partner in two separate criminal proceedings in Wayne County: *People v.*

*Lynem*, No. 15-010312-02-FH; and *People v. Lynem*, No. 15-010313-02-FH.  Both

cases involved falsifying official police reports and other crimes of dishonesty.

(*Id.*). The cases were consolidated, and Worthy tried Lynem in January 2017.

Worthy provided video evidence at trial to prove that Lynem and his work partner

offered untrue accounts of the facts underlying both cases.  (ECF No. 3,

PageID.46-48).  Nonetheless, the jury acquitted Lynem on all charges.  (*Id.* at

PageID.49; ECF No. 1, PageID.22-23).  Neither Lynem nor Worthy ordered the

transcripts from the trial, however, and it is unclear why the jury returned a not

guilty verdict.  (*Id.*).

In October 2014, the Detroit Police Department ("DPD") suspended Lynem

pending its own investigation of the aforementioned claims regarding his filing of

false reports.  The day before Lynem was suspended, he testified as the primary

witness for the prosecution in a federal criminal proceeding against a defendant in

another matter, *McClellon*, over which United States District Judge David Lawson

presided.  *See United States v. McClellon*, 260 F. Supp. 3d 880, 882 (E.D. Mich.

2017).  Lynem did not inform the United States Attorney's Office about the

investigation, which resulted in the prosecutor not disclosing it to the defense in

the *McClellon* case.  *Id.*  The jury returned a guilty verdict in *McClellon* in October

2014, but based on Lynem's undisclosed investigation, the defendant moved for a

new trial in March 2016, which the court granted.  *Id.*  The court found that the

failure to disclose the investigation by Lynem, and therefore the government,

amounted to a Brady violation.  *Id.* at 888.  Judge Lawson explained that,

"[e]vidence that Lynem fabricated weapons charges against others could have

affected the judgment of the jury."  *Id.* at 885.  (quotation marks omitted).

On July 16, 2020, WCPO disseminated a Brady-Giglio list on its website,

accompanied by a statement from Defendant which read in relevant part:

> Last October we contacted all local Police Chiefs,
> representatives from the Wayne County Sheriff's,
> Michigan State Police and Federal agencies.  We asked
> for a list of their current and former officers that have
> committed offenses spelled out in the Giglio case for
> offenses involving theft, dishonesty, fraud, false
> statement, bias and bribery.  These are crimes that can be
> considered by fact finders in a trial when credibility is
> being assessed.  In addition, our assistant prosecutors are
> charged with letting defense attorneys know when an
> officer on their witness list for a case had Giglio issues or
> concerns.

(ECF No. 1, PageID.28).

Lynem was included on the list for the stated reasons of "[d]ishonesty and false statements." (ECF No. 1, PageID.30). The list included 35 officers and provided the reason for inclusion of each officer, but did not specify whether the officers were convicted, acquitted and/or accused of the listed offenses. (ECF No. 1, PageID.30-31). Before and after WCPO published the list on its website, various media companies, attorneys and other individuals sought and received copies of it from WCPO pursuant to Michigan's Freedom of Information act. (ECF No. 3, PageID.51). Additionally, at least eight news organizations subsequently published the list. (ECF No. 1, PageID.5).

On December 7, 2020, Worthy released another similar statement to the press[1] regarding the same Brady-Giglio list, which read in relevant part:

> In July 2020, the Wayne County Prosecutor's Office contacted all local Police Chiefs, representatives from the Wayne County Sheriff's Office, Michigan State Police, and Federal agencies. We asked for a list of their current and former officers that have committed offenses detailed in *Giglio v. United States* that involve theft, dishonesty, fraud, false statement, bias, and bribery. These are offenses that can be considered by fact finders in a trial when credibility is being assessed. In addition, our assistant prosecutors are charged with letting defense attorneys know when an officer on their witness list for a case has Giglio issues or concerns.
>
> (*Id.* at 33). (citations omitted).

---

[1] The parties do not clarify in their briefing whether the second statement was released on WCPO's website or elsewhere.

Plaintiff remains employed by DPD and was promoted to Sergeant in November 2020.  (ECF No. 3, PageID.52).

## III.   PROCEDURAL HISTORY

Lynem filed his Complaint on March 10, 2021 against Worthy individually and in her official capacity as a WCPO prosecutor, alleging substantive and procedural due process violations under the Fourteenth Amendment (Count I) pursuant to 42 U.S.C. § 1983, along with various state law claims including defamation, defamation per se, negligence, gross negligence, and intentional infliction of emotional distress (Counts II-V).  (ECF No. 1).  Worthy filed a Motion to Dismiss all counts of the Complaint, which has been fully briefed, heard by the court, and is now ready for determination.  (ECF Nos. 3-5).

## IV.   STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must first comply with Fed. R. Civ. P. 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A plaintiff is also obliged "to provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th

Cir. 2007) (*quoting Twombly*, 550 U.S. at 555 (citations and internal quotation

marks omitted)).

In *Ashcroft v. Iqbal*, the Supreme Court explained that a civil complaint

survives a motion to dismiss only if it "contain[s] sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." 556 U.S.

662, 677 (2009). "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id.* at 678. And while a complaint need not

contain "detailed" factual allegations, its "[f]actual allegations must be enough to

raise a right to relief above the speculative level on the assumption that all the

allegations in the complaint are true." *Id.* (*quoting Twombly*, 550 U.S. at 555

(citation and internal quotation marks omitted)); *See also League of United Latin*

*Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (the factual allegations

in a complaint need not be detailed but they "must do more than create speculation

or suspicion of a legally cognizable cause of action; they must show entitlement to

relief.")

As a general rule, a court may not consider matters outside the four corners

of the complaint when ruling on a motion to dismiss under Rule 12(b)(6). *Clark v.*

*Walt Disney Co.*, 642 F. Supp. 2d 775, 781 (S.D. Ohio 2009). However,

exceptions to this rule exist.  For example, under Rule 10(c), copies of written instruments attached as exhibits to a pleading are a part of that pleading for all purposes; therefore, the court may consider any documents that the plaintiff has attached to the complaint.  The court may also consider documents that a defendant attaches to a motion to dismiss if the documents are referred to in the complaint and are central to the plaintiff's claims.  *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997).  And, of particular relevance here, the court may consider public records and matters of which a court may take judicial notice.  *See Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), abrogated on other grounds, *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002).

Here, Defendant references a trial and related proceedings held in this District, in which Plaintiff was involved in his official capacity as a police officer: *United States v. McClellon*, No. 14-20280 (E.D. Mich. 2017).  In particular, Defendant highlights the district judge's order granting the defendant a new trial based on the prosecutor's failure to disclose evidence that Lynem had been charged with fabricating charges against others.  (ECF No. 3, PageID.49-51).  Plaintiff does not address Defendant's reference to the *McClellon* case, but to provide a complete summary of the facts relevant to the parties' arguments, the court has reviewed and incorporated the aforementioned order into the Factual Background section of this opinion.  The court may take judicial notice of and

properly consider the order, as it is an order and matter of public record.  *See Jackson*, 194 F.3d at 745; *see also Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (The court may consider "'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint,'" without converting the motion to dismiss into one for summary judgment.).

## V.   ANALYSIS

Lynem does not challenge his inclusion on the Brady-Giglio list.   Rather, he takes issue with the statements Worthy made in connection with the list. Specifically, Lynem is concerned with Worthy's use of the words "committed" and "crimes" to describe her reason for placing him on the list.  Lynem asserts that his reputation has been harmed as a result of Worthy's statements made in connection with WCPO's publication of the list.  Lynem also contends that, because he was tried by a jury and acquitted on all charges formally brought against him relating to the crimes of dishonesty that Worthy relied on in placing his name on the list, Worthy deprived him of his property and liberty interest in his acquittal.  Based on these facts, the Complaint brings claims under § 1983 and several state laws, requesting monetary relief.  Lynem also requests declaratory and injunctive relief in the form of the court declaring that Worthy violated Lynem's constitutional

rights; Worthy's retraction of her statements; and her clarification that Lynem was not convicted of any crimes.

Worthy counters that she is entitled to absolute and qualified immunity with respect to Plaintiff's § 1983 claims, and statutory immunity regarding his state law claims.[2][3]  Worthy also maintains that Lynem fails to state a claim for relief under § 1983, and that because Lynem's federal claims fail, the court should not exercise supplemental jurisdiction over his state law claims.

### A. 42 U.S.C. § 1983 Claims

The court will first address whether Worthy is entitled to absolute and/or qualified immunity regarding Plaintiff's § 1983 claims.  Section 1983 "subjects to liability every person who, acting under color of state law, commits . . . prohibited acts."  *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993).  However, the Supreme Court "recognize[s] two kinds of immunities under § 1983" which include absolute and qualified.  *Id.* at 268-9.  Of note, "[m]ost public officials are entitled only to

---

[2] Plaintiff names Worthy as a defendant in both her individual and official capacities but does not directly name WCPO.  However, Defendant argued in its briefing that WCPO is entitled to immunity as to all claims, presumably because Plaintiff references concerns with WCPO's "policy or custom" in Count I of the Complaint which could signal a *Monell* claim.  Plaintiff clarified in his briefing that his claims are not directed toward WCPO.  Accordingly, the court will not address Defendant's arguments regarding claims against WCPO.

[3] Defendant also dedicated a significant portion of her briefing justifying her decision to place Plaintiff on the Brady-Giglio list, and arguing that she is entitled to immunity on her decision.  Plaintiff clarified in his briefing that his claims relate to Defendant's statements accompanying WCPO's publication of the list, as opposed to her inclusion of his name on the list.  As such, Plaintiff maintains, and this court agrees, that those arguments are irrelevant and will not be addressed.

qualified immunity" because absolute immunity is "quite sparing[ly]" recognized. *Id.* at 269.

### i. Absolute Immunity

Defendant argues that prosecutorial immunity would not only preclude claims arising from her inclusion of Plaintiff on the list, but also claims arising from Defendant's stated reasons for placing Plaintiff on the list.  For support, Defendant cites *Roe v. City & County of San Francisco*, 109 F.3d 578 (9th Cir. 1997), *Savage v. Maryland*, 896 F.3d 260 (4th Cir. 2018), and a similar line of cases to argue that "immunity applies even if the determination is allegedly 'harsh' or 'unfair.'"  (ECF No. 5, PageID.464).  Defendant also contends that absolute immunity should apply here because Lynem has not cited any cases suggesting otherwise.

Lynem counters that Worthy is not entitled to absolute immunity because the statements at issue were not related to her role as an advocate for the state, as established by the Supreme Court in *Buckley*.  509 U.S. at 278.  He also argues that the line of cases on which Worthy relies are not relevant because they focus on prosecutorial immunity for decisions about whether to prosecute a case based on the prosecutor's evaluation of witness credibility, not a prosecutor's public statements made in connection with the decisions.

Government officials are entitled to absolute immunity from suits seeking monetary damages for "special functions" that would have been immune under common law when Congress enacted § 1983. *Id.* at 269. To determine whether particular actions fit within a common law tradition of absolute immunity, courts must apply a "functional approach." *Id.* With respect to "the function of contemporary prosecutors," courts "look[] to the nature of the function performed, not the identity of the actor who performed it." *Id.* (citations and quotation marks omitted). Accordingly, the Supreme Court has established that absolute immunity is appropriate for prosecutor conduct that was "intimately associated with the judicial phase of the criminal process." *Id.* at 270. This means that "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Buckley*, 509 U.S. at 273. For instance, "[t]he [Supreme] Court [has] declared that [a prosecutor] advising police in the investigative phase of a criminal case was not 'intimately associated with the judicial phase of the criminal process.'" *Rouse v. Stacy*, 478 F. App'x 945, 948 (6th Cir. 2012) (citing *Burns v. Reed*, 500 U.S. 478, 493 (1991)). The Court reasoned that:

> [It] is not merely a generalized concern with interference with an official's duties, but rather is a concern with interference with the conduct closely related to the judicial process. Absolute immunity is designed to free

> the judicial process from the harassment and intimidation associated with litigation.  That concern therefore justifies absolute prosecutorial immunity only for actions that are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing conduct.
>
> *Rouse*, 478 F. App'x at 948 (citing *Burns*, 500 U.S. at 494) (citations omitted).

Similarly, the Court has also "determined that a prosecutor was not entitled to absolute immunity for his alleged misconduct in a criminal investigation or for false statements made to the media during a public announcement of the indictment." *Id.* at 948 (citing *Buckley*, 509 U.S. at 273).  In *Buckley*, the Court reasoned that "[c]omments to the media have no functional tie to the judicial process just because they are made by a prosecutor.  At the press conference, [the prosecutor] did not act in his role as advocate for the State." 509 U.S. at 277.  The Court further explained:

> The conduct of a press conference does not involve the initiation of a prosecution, the presentation of the state's case in court, or actions preparatory for these functions.  Statements to the press may be an integral part of a prosecutor's job and they may serve a vital public function.  But in these respects a prosecutor is in no different position than other executive officials who deal with the press, and. . . qualified immunity is the norm for them.
>
> *Id.* (citation omitted).

Moreover, "the official seeking absolute immunity bears the burden of showing that such immunity is justified."  *Id.* at 269 (citations and quotation marks

omitted).  And courts are to be "quite sparing in recognizing absolute immunity for state actors in this context."  *Id.*

The cases that Defendant cites are distinguishable from this case and she has not argued that her statements were "intimately associated with the judicial phase of the criminal process," such that they warrant application of absolute immunity. *Id.*  Worthy cites *Roe*, 109 F.3d 578, *Savage,* 896 F.3d 260, and a line of similar cases to argue that prosecutorial immunity would not only preclude claims arising from an individual's inclusion on the list, but also preclude claims arising from a prosecutor's stated reasons for placing an individual on the list.  However, those cases resolve a question that is not currently presented before this court: whether prosecutors are immune from claims arising from their decision whether to prosecute based on a witness's questionable credibility, even where the prosecutor may have a "harsh" or "unfair" reason for questioning witness credibility.  For instance, in *Roe*, an officer sued a prosecutor for refusing to prosecute individuals that the officer arrested after the prosecutor determined that the officer was not a credible witness.  109 F.3d at 581.  In finding that the prosecutor was entitled to absolute immunity under § 1983 "for decisions not to initiate prosecutions," the court noted that "there can be no question that the nature of the decision not to prosecute is intimately associated with the judicial phase of the criminal process." *Id.* at 583 (quotation marks and citation omitted).  Similarly, in *Savage*, an officer

brought § 1983 claims against a prosecutor for refusing to call the officer as a

witness at trial which ultimately led to the officer's employment termination.  896

F.3d at 265.  The Court extended absolute immunity to the prosecutor's decision

not to call the officer as a witness, noting that "the actions [taken by the prosecutor

that the officer] describe[d] were intimately associated with the judicial phase of

the criminal process."  *Id.* at 270.  The Court explained that "[d]ecisions regarding

witness testimony—which witnesses to call, whether potential witnesses are

credible, and how to proceed in the face of credibility questions—are a core

prosecutorial function, directly tied to the conduct of a criminal trial."  *Id.*  Further,

the Court highlighted that this "is especially so when. . . assessments of witness

credibility are tightly intertwined with determinations about which cases to

charge."  *Id.*

The court need not determine whether, as Worthy argues, those cases

support that a prosecutor enjoys absolute immunity from damages liability

stemming from her decision to place an officer on a Brady-Giglio list.  Indeed, that

question is not at issue here.  *See, supra,* fn 3.  Rather, the court must determine

whether absolute immunity extends to a prosecutor's statements made in

connection with the publication of a Brady-Giglio list.  Worthy cites *Savage* to

argue that these cases also support the conclusion that immunity extends to her

assessment of the Lynem's credibility whether "accurate or not."  896 F.3d at 271.

*Savage* does support that Worthy's reasons for choosing not to call an officer as a witness at trial are immune, but nowhere in the opinion does the court extend this immunity to the prosecutor's publication or otherwise dissemination of the reasons to the public.  The instant case is more like *Buckley*, where the Court determined that a prosecutor's false statements to the media during the announcement of a criminal indictment may be entitled to qualified immunity, but not absolute immunity.  *See* 509 U.S. at 273 (finding that press comments may serve a vital public function but are not entitled to absolute immunity if they are not intimately associated with the judicial phase.)  Indeed, just as the Court determined that "[t]he conduct of a press conference [did] not involve the initiation of a prosecution, the presentation of the state's case in court, or actions preparatory for these functions," statements made in connection with the release of the subject Brady-Giglio list did not involve these things either.  *Id.* at 278.  Worthy has not made any argument to establish that the statements she made were "intimately associated with the judicial phase of the criminal process."  As such, she has not satisfied her burden of showing that she is entitled to absolute immunity.  *Id.* at 270.  Considering that the burden ultimately rests with Defendant, her argument that Plaintiff has not cited any cases to prove that she is not entitled to absolute immunity is also unavailing.  Consequently, the court finds that absolute immunity does not apply.

### ii. Qualified Immunity

Worthy also argues alternatively that she is entitled to qualified immunity as to Lynem's § 1983 claims.  Qualified immunity "shields federal and state officials from money damages unless a plaintiff alleges facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Cunningham v. Shelby Cty., Tennessee*, 994 F.3d 761, 764 (6th Cir. 2021) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, (2011)).  "Because both prongs must be satisfied by the plaintiff, [courts] are permitted to decide which prong of the qualified immunity equation to tackle first." *Id.*  Although a case does not need to be directly on point to clearly establish a right, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*  Unlike the burden in absolute immunity which rests with the party asserting the defense, the "plaintiff bears the burden of showing that defendants are not entitled to qualified immunity." *Id.* (citation omitted).  Lynem fails in this regard.

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  The Due Process Clause guarantees both "substantive" and "procedural" rights, which require separate analyses when determining whether either has been violated.  *See Doe v. Michigan Dep't of State Police*, 490 F.3d 491,

502 (6th Cir. 2007) (applying different standards for procedural and substantive due process claims) (citing *Paul v. Davis*, 424 U.S. 693, 711 (1976); *see also Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014) ("The [D]ue [P]rocess [C]lause has both procedural and substantive components[.]")

### 1. Procedural Due Process

Lynem invites the court to employ the "stigma-plus" test to analyze his due process claims.  As defined by the Supreme Court, "the stigma-plus test is used to analyze a [procedural] due process claim where the action taken by the state injures the plaintiff's reputation." *Doe v. Michigan Dep't of State Police*, 490 F.3d 491, 501 (6th Cir. 2007) (citing *Paul*, 424 U.S. at 710).  Importantly, there is "no constitutional doctrine converting every defamation by a public official into a deprivation of liberty within the meaning of the Due Process Clause." *Paul*, 424 U.S. at 702.  As such, a stigmatized reputation alone is not "liberty" or "property" by itself sufficient to invoke the procedural protection of the Due Process Clause. *Id.* at 701.  Rather, a procedural due process claim requires deprivation of "more tangible interests such as employment." *Id.*  "A successful plaintiff must therefore show that the state's action both damaged his or her reputation (the stigma) and that it deprived [him or her] of a right previously held under state law (the plus)." *Doe*, 490 F.3d at 501–02 (quotation marks and citation omitted).  In other words, "the alleged damage must be tied to some alteration of a right or status previously

recognized by state law." *Crosby v. Univ. of Kentucky*, 863 F.3d 545, 555 (6th Cir. 2017).

Take, for example, the Supreme Court's decision in *Paul*, where a police department distributed a flyer captioned "Active Shoplifters" among local merchants that included names and photographs of several individuals including the plaintiff. 424 U.S. at 697. The flyer "identified the plaintiff as 'a person[ ] who [had] been arrested . . . or [had] been active in various criminal fields. . .'" *Jackson v. Heh*, 215 F.3d 1326 (6th Cir. 2000) (discussing *Paul*, 424 U.S. at 695). The plaintiff was placed on the flyer because he had been charged with shoplifting, but after he pleaded not guilty, a judge dismissed the charge before his guilt or innocence had been resolved. *Paul*, 424 U.S. at 696. Upon receipt of the flyer, the plaintiff's employer told him that he would not be fired but warned that he "'had best not find himself in a similar situation in the future." *Id.* Based on this, the plaintiff sued the police department alleging that the defamatory statements in the flyer "seriously impair[ed] his future employment opportunities." *Id.* at 697. In acknowledging that the plaintiff's reputation may have been harmed, the Court held that "reputation alone, apart from some more tangible interests such as employment, is [neither] 'liberty' [nor] 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." *Id.* at 701.

The Sixth Circuit has also provided examples outside the context of claims centered on the loss or threat of the loss of employment. *Meyers v. Vill. of Oxford*, 739 F. App'x 336, 339 (6th Cir. 2018). "In such cases, the alleged defamation still must be tied to some alteration of a right or status previously recognized by state law." *Id.* at 339. For instance, the Court has declared unconstitutional a state statute allowing police to post a notice forbidding the provision of alcohol to individuals whose excessive drinking could pose a danger to the community. *Id.* (discussing *Wisconsin v. Constantineau*, 400 U.S. 433 (1971)). The Court found that the posting "significantly altered [the plaintiff's] status as a matter of state law" which, combined with the resulting injury, "justified the invocation of procedural safeguards." *Paul*, 424 U.S. at 708 (discussing *Constantineau*, 400 U.S. 433). In so finding, the Court emphasized "the fact that the governmental action . . . deprived the individual of a right previously held under state law the right to purchase or obtain liquor in common with the rest of the citizenry." *Id.* The Court reached the same conclusion in *Goss v. Lopez*, 419 U.S. 565 (1975), where it analyzed the constitutional rights of students suspended from school based upon charges of misconduct without being offered a hearing. *Paul*, 424 U.S. at 708 (discussing *Goss*, 419 U.S. 565). "While the Court noted that charges of misconduct could seriously damage the student's reputation, it also took care to point out that Ohio law conferred a right upon all children to attend school, and

that the act of the school officials suspending the student there involved resulted in a denial or deprivation of that right." *Id.*  Following suit, the Sixth Circuit found the stigma-plus test satisfied where "city employees forced [an independent contractor, who previously held "staff privileges" to use the city's ice skating rink,] off the ice and publicized false accusations of child sexual abuse against her." *Meyers*, 739 F. App'x at 340 (discussing *Mertik v. Blalock*, 983 F.2d 1353 (6th Cir. 1993)).

The court has not found any cases by the Supreme Court or this Circuit and the parties have cited none where, as here, the plaintiff brought a due process claim complaining of reputational harm regarding statements for which he had been charged and acquitted.  However, other circuits have not assigned any additional value to such statements as to find a due process violation absent an allegation of the alteration of a right or status previously recognized by state law.  For instance, in *Cooley v. Barber*, No. 07-3327, 2007 WL 2900550, at *1 (3d Cir. Oct. 4, 2007), the "appellant allege[d] that his constitutional rights were violated as a result of alleged defamatory statements made by a police officer which were repeated in newspaper articles and television broadcasts."  Though "the statements concerned crimes for which [the appellant] was charged, tried and acquitted[,]" the Third Circuit agreed with the lower court that the appellant failed to state a claim because "reputational harm alone is not a right protected by the Constitution."  *Id.* at *1.

The court noted that the loss of private employment was also not constitutionally protected. *Id.* at *2. Similarly, the First Circuit found that a complaint failed to state a due process claim under the stigma-plus test where prosecutor defendants "made public statements that were [allegedly] designed to discredit and injure the [police officer] plaintiff in his employment and reputation." *Celia v. O'Malley*, 918 F.2d 1017, 1020 (1st Cir. 1990). In that case, the plaintiff had been acquitted of the charges regarding the conduct referenced in the prosecutor's statements, and alleged that the statements resulted in a deprivation of his constitutional right not to be tried without indictment by a grand jury. *Id.* at 1001. Still, however, emphasizing that the plaintiff failed to connect the statements to the alleged constitutional right, the court found that he had not satisfied the stigma-plus test. *Id.* at 1021. The court emphasized that a harmed reputation alone will not satisfy the stigma-plus test. *Id.* at 1021.

Here, even accepting the Complaint's allegations as true that Defendant's statements made in connection with WCPO's publication of the Brady-Giglio list are false and has harmed Plaintiff's reputation to such a degree as to satisfy the "stigma," Plaintiff has not connected the statement to the deprivation of a liberty interest to satisfy the "plus." Lynem argues that Worthy's statements labeled him as a convicted criminal (stigma) and deprived him of his liberty interest in his acquittal (plus). Plaintiff further contends that his liberty interest in his acquittal

has been clearly established as to overcome a qualified immunity defense.  But Worthy counters that Plaintiff has not established a cognizable "liberty" or "property" interest because he remains employed by DPD and was even promoted after Worthy made the statements of which he complains.

Worthy does not apparently dispute that her statements could be harmful to Lynem's reputation and thus stigmatizing.  Accordingly, the court must analyze whether Plaintiff has also satisfied the plus; namely, whether Lynem has met his burden of showing that Worthy deprived him of his liberty interest in his acquittal, and that such interest was a constitutional right.  He has not.

The Complaint alleges that Worthy's statements deprived Lynem of his "liberty and property interests in his acquittal, and his right to be considered to have been adjudicated fully and finally with his presumptive innocence intact." (*See* ECF No. 1, PageID.11).  For support, Plaintiff contends that his "liberty interest in his acquittal derives[,]" though it is allegedly a procedural due process interest, from three sources which include: (1) the Sixth Amendment's Jury Trial Clause; (2) the Fifth Amendment's Double Jeopardy Clause; and (3) the Fourteenth Amendment's Due Process Clauses.  (ECF 4, PageID.446).  First, with respect to the Jury Trial Clause, Plaintiff argues that Worthy's statements deprived him of his interest "in the determination by a jury of his peers that he was not guilty."  (*Id.* at PageID.448).  Second, Plaintiff argues that "Defendant has

circumvented the finality mandated by the Double Jeopardy Clause by unilaterally declaring Plaintiff's 'guilt' after he was acquitted of all charges by a jury." (*Id.* at PageID.447).  Third, with respect to the Due Process Clause, Plaintiff argues that because a prosecutor is prohibited from publishing her determination of a criminal defendant's guilt prior to a during trial, the Constitution also prohibits her from publishing such determinations after a final judgment and acquittal.  (*Id.* at PageID.449).

Plaintiff has not cited authority to support any of these theories to establish that he has a "liberty" or "property" interest in the enjoyment of a prosecutor's acknowledgement or deference to his acquittal when making public statements about whether or not he has engaged in misconduct, and the court has found none. The crux of Plaintiff's argument appears to be that he has a constitutional right to the finality of his acquittal.  Importantly, however, the Complaint does not allege that his acquittal has been somehow nullified or faces any such risk.  Indeed, since acquittals are not appealable, the prospect is non-existent.  Instead, though creatively crafted, Plaintiff's arguments regarding Defendant's alleged interference with his acquittal amount only to an allegation of reputational harm.  *See Jackson*, 215 F.3d 1326 (finding that district court properly dismissed complaint because the claims, "no matter how styled, did not establish that the defendants deprived him

of a constitutionally protected right without due process of law.").[4]  Absent an
additional allegation tying this reputational harm to "some alteration of a right or
status previously recognized by state law[,]"  Plaintiff has not alleged the plus to
satisfy the stigma-plus test.  *Crosby*, 863 F.3d at 555 (6th Cir. 2017).

Just as the plaintiffs in *Paul* had not pleaded an injury beyond reputation,
Lynem has not pointed to any "tangible" injury apart from reputational harm.  *Id.*
at 701.  In fact, Defendant maintains that Plaintiff remains employed by DPD and
was promoted in November 2020, after Defendant's first statement was released in
July 2020.  Lynem has not disputed that his employment status is intact.  Neither
has he alleged any other Constitutional harm.  This is not a case like
*Constantineau*, 400 U.S. 433, where the plaintiff was deprived of a previously held
right to purchase liquor, or *Goss*, 419 U.S. 565, where the students were deprived
of their right to attend school without first being heard.  Unlike those plaintiffs,
Lynem's allegations do not establish a plausible claim that he was deprived of any
constitutionally protected right or status previously held by state law, apart from
reputational harm, deriving from his acquittal.  *See Crosby*, 863 F.3d at 555 ("the
alleged damage must be tied to some alteration of a right or status previously
recognized by state law.").  The instant case is more like the cases where a plaintiff

---

[4] The plaintiff in *Jackson* claimed that the defendant's false statements caused him to be
terminated from the only company that would employ a person with his particular training at his
then-current salary, thereby depriving him of his right to continued employment.  *Id.*

complains of public statements made against him regarding claims for which he had been acquitted but fails to allege a resulting deprivation of a "liberty" or "property" interest as to invoke the protections of the Constitutional Due Process Clause: *Celia*, 918 F.2d at 1020, and *Cooley*, 2007 WL 2900550, at *1. Put simply, even if the Complaint alleges the stigma, it does not establish the plus as to satisfy the stigma-plus test.

Lynem has not plausibly alleged that Worthy's statements disturbed his acquittal in any way apart from reputation harm, that procedural due process guarantees protection against any such disturbance, or most importantly, that there exists a protectable liberty interest in his acquittal that has been clearly established as protectable under the Due Process Clause. *Cunningham*, 994 F.3d at 764. The burden to overcome a qualified immunity defense rests with the plaintiff, and Lynem has not met his burden here. *Id.* For this reason, the court finds that Worthy is entitled to qualified immunity with respect to Lynem's § 1983 due process claims for monetary damages.

## 2. Substantive Due Process

The "substantive component of the Due Process Clause protects 'fundamental rights' that are so 'implicit in the concept of ordered liberty' that 'neither liberty nor justice would exist if they were sacrificed.'" *Doe v. Michigan Dep't of State Police*, 490 F.3d 491, 499 (6th Cir. 2007) (citing *Palko v. Conn.*, 302

U.S. 319, 325 (1937)).  "Such rights include 'the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion.'"  *Id.* at 499 (citing *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)).  "The Supreme Court has cautioned, however, that it has always been reluctant to expand the concept of substantive due process because guideposts for responsible decision making in this unchartered area are scarce and open-ended."  *Id.* (citation and quotation marks omitted).  Accordingly, to establish the deprivation of a fundamental right under the substantive Due Process Clause, a plaintiff must (1) "show as a predicate the deprivation of a liberty or property interest, as well as" (2) "conscience-shocking conduct."  *Siefert v. Hamilton Cty.*, 951 F.3d 753, 766 (6th Cir.).

Lynem argues that he plausibly established his liberty interest in his acquittal through the procedural due process analysis he offered in his briefing, and accordingly does not need to re-establish his interest with respect to substantive due process.  He also advances several arguments to support that Worthy's statements amount to conscience-shocking conduct.  Worthy counters that neither the Supreme Court nor the Sixth Circuit have recognized a substantive due process claim arising from public employment.

Plaintiff has not satisfied his burden to overcome Defendant's qualified immunity defense to his substantive due process claim.  Just as the arguments

- 26 -

Plaintiff raised in support of his procedural due process claim did not establish that Worthy's statements deprived him of a "liberty" or "property" interest, they are similarly futile here.  Lynem does not offer any additional analysis to support the "predicate," that his interest in his acquittal is a "liberty or property interest" with respect to substantive due process.  *Siefert*, 951 F.3d at 766.  Instead, he relies entirely on the stigma-plus analysis that he offered to support his procedural due process claim.  This reliance is fatal for two reasons.  First, as the court established above, Plaintiff did not plausibly allege that he had a liberty interest in his acquittal for purposes of procedural due process, or that such interest is clearly established.  Second, Plaintiff offered a "stigma-plus" analysis to support his procedural due process claim which is inapplicable to substantive due process claims.  *See Doe*, 490 F.3d at 502 (finding that district court erred in applying stigma-plus test to substantive due process claims because a review of caselaw failed to identify any binding or persuasive authority that has done the same).

Accordingly, the court finds that Worthy is entitled to qualified immunity on Lynem's substantive due process claim also.  Lynem has not plausibly alleged that Worthy's statements deprived him of a constitutionally protected liberty or interest.  *Cunningham*, 994 F.3d at 764.  As such, his contention that such a right has been clearly established necessarily fails.

### iii.  Injunctive Relief

Plaintiff seeks injunctive relief "in the form of a retraction of Defendant's statements. . . and a clarification that Plaintiff has *never* been convicted of any crime involving theft, dishonesty, fraud, false statement, bias and bribery."  (ECF Nos. 1, PageID.19; 4, PageID.455).  Worthy argues that Plaintiff's request for injunctive relief fails due to his failure to identify a "liberty" interest within the meaning of the Due Process Clause.  Plaintiff counters that this court has authority to afford him injunctive relief because he has established that Defendant violated his due process rights.  The court does not agree.

Though qualified immunity shields state officials from liability for monetary damages, it does not afford the same protection against claims for injunctive relief. *See Hensley v. Wilson*, 850 F.2d 269, 273 (6th Cir. 1988) (noting that injunctive relief would be permissible even where a defendant is entitled to qualified immunity) (citing *Mitchell v. Forsyth*, 472 U.S. 511 (1985)).  As such, Plaintiff's claim for injunctive relief under § 1983 must survive if he states a claim for a violation of his substantive or procedural due process rights under the Fourteenth Amendment.  However, where, as here, the underlying claim fails there is no entitlement to injunctive relief.  *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 587 (6th Cir. 2021) (where the plaintiff "has failed to state a claim for any constitutional deprivation under § 1983, he is not entitled to injunctive relief on

such a claim.").  Both substantive and procedural due process require a plaintiff to

establish that a liberty or property interest is at issue.  *See Doe*, 490 F.3d at 502

(holding that a plaintiff must establish a "tangible" "liberty" or "property" interest

in addition to reputational harm to succeed on a procedural due process claim

regarding injury to reputation); *see also Siefert*, 951 F.3d at 766 (noting that to

establish the deprivation of a fundamental right as to invoke the substantive due

process clause, a plaintiff must "show as a predicate the deprivation of a liberty or

property interest[.]").  As the court discusses at length above, Lynem has not

plausibly alleged that Worthy's statements deprived him of any "liberty" or

"property" interest afforded to him through his acquittal within the meaning of

either the substantive or procedural components of the Due Process Clause.  As

such, the Complaint does not state a due process claim as to establish that Plaintiff

is entitled to any right to injunctive relief.  And, because Lynem fails to state a §

1983 claim against worthy, his request for declaratory relief also necessarily fails.

### B. Supplemental Jurisdiction over State Law Claims

Counts II-V of the Complaint allege various state law claims including

defamation, defamation per se, negligence, gross negligence, and intentional

infliction of emotional distress.  Defendant contends that this court should refuse to

exercise supplemental jurisdiction over Plaintiff's state law claims because his

federal claims cannot not survive Defendant's Motion to Dismiss.  Defendant also

argues that she is entitled to statutory immunity on Plaintiff's state law claims.

Plaintiff counters that each of the relevant determinations that a district court

should make when assessing whether to exercise supplemental jurisdiction weigh

in favor of this court doing so.

Pursuant to 28 U.S.C. § 1367, district courts may exercise supplemental

jurisdiction over state law claims.  However, "supplemental jurisdiction is

discretionary, not mandatory."  *Charvat v. NMP, LLC*, 656 F.3d 440, 446 (6th Cir.

2011).  A district court may decline to exercise supplemental jurisdiction when:

> (1) the claim raises a novel or complex issue of [s]tate
> law,
>
> (2) the claim substantially predominates over the claim or
> claims over which the district court has original
> jurisdiction,
>
> (3) the district court has dismissed all claims over which
> it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other
> compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c); *Hucul Advert., LLC v. Charter Twp. of Gaines*, 748 F.3d 273,

281 (6th Cir. 2014).  Having determined that Plaintiff fails to state a federal claim

for relief, the court has dismissed all claims over which it has original jurisdiction.

Accordingly, the court declines to exercise supplemental jurisdiction over

Plaintiff's state law claims.

## VI.   <u>CONCLUSION</u>

For the reasons discussed herein, the court finds that Lynem fails to sufficiently plead that Worthy's statements deprived him of his constitutional due process rights.  Therefore, Lynem cannot sustain his § 1983 claims against Worthy. And, because this court has dismissed Plaintiff's federal claims, it will not exercise supplemental jurisdiction over his state-law claims.  Accordingly, the court **GRANTS** Defendant's Motion to Dismiss.

**SO ORDERED**.

<u>s/Stephanie Dawkins Davis</u>
HON. STEPHANIE DAWKINS DAVIS
United States District Court Judge

Dated: March 31, 2022